GEORGE B. LOURIE, GUARDIAN OF BESSIE R. MELNICK, PETITIONER

*vs.*

JACOB MELNICK.

Cumberland.     Opinion May 6, 1929.

*Charles F. King,*
*Clarence W. Peabody,* for petitioner.
*Arthur D. Welch,* for respondent.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, BASSETT, PATTANGALL, JJ.

PATTANGALL, J. Petition under Sec. 11, Chap. 65, R. S. Dismissed below. Case comes forward on exceptions.

Jacob Melnick and Bessie R. Melnick were married June 15, 1915. They lived together for three years, during which time two children were born to them, and then separated by mutual agreement as evidenced by a document which they subscribed.

On August 17, 1925, the husband brought a libel for divorce, charging his wife with utter desertion for the statutory period of three years and with cruel and abusive treatment, also praying for the custody of the minor children. The libel, in the regular course of proceedings, came on for hearing in November, 1925, the wife being represented by counsel. The presiding Justice was then informed that the wife was insane. The case was continued, provision being made for the support of the wife and children.

On May 12, 1926, the husband filed a petition in the Probate Court for Cumberland County, in which he represented his wife as insane, praying that she be committed to the State Insane Hospital; and on the same day he, being a practising physician, filed a certificate to which he made oath that, after due inquiry and personal examination, it was his opinion that his wife was insane. Whether this certificate satisfied the requirements of Sec. 25, Chap. 145, or not is not the point; the certificate was filed. The certificate and the knowledge which it disclosed became of record. This petition was dismissed, the ground therefor not appearing.

No guardian *ad litem* was appointed. On July 8, 1926, and on February 12, 1927, the case was called up and in each instance after hearing evidence was continued, counsel for the wife appearing and urging the insanity of the libellee.

On April 20, 1927, the case was finally decided. Counsel still insisted upon the insanity of the wife, who all of this time had been resident of another state, is not shown by the record to have personally taken part in any of the proceedings and who was not even present in court at the time of the final hearing.

The presiding Justice found the libellee sane and that she had been sane during the entire period covering the three years immedi-

ately preceding the filing of the libel and a divorce was granted on the ground of desertion. Exceptions were taken, and the case was in order for argument before the full bench on June 30, 1927, at which time it was dismissed for want of prosecution.

December 27, 1927, in the Probate Court of Suffolk County, Massachusetts, a guardian was appointed for the wife, she having been adjudged a person of unsound mind, and on January 5, 1928, these proceedings were begun and hearing was had thereon before the same trial Judge who heard the original case. At the February term, 1928, the Justice dismissed this petition.

Such a petition is somewhat in the nature of a petition for review. *Simpson* v. *Simpson*, 119 Me., 17. Petitioner seeks to establish, in the words of the statute, that in the original proceedings justice failed by reason of "fraud, accident, mistake or misfortune." These words are a repetition of a like phrase in Paragraph vii, Sec. 1, Chap. 94, R. S., relating to petitions for review in civil cases.

The petition in the case at bar, so far as now relied upon, was based on the following allegations: (1) That Bessie R. Melnick was, at the time of the acts complained of in the libel for divorce and at the time of the trial thereof, of unsound mind. (2) That at the time she purported to answer and defend the libel, she was not legally competent to act without a guardian *ad litem* and one was not appointed. (3) That at the time of the final hearing on the libel, she was unable to be present by reason of physical illness and unable to instruct her counsel by reason of mental incapacity. (4) That her husband was aware of her condition but deceived the court concerning the same. (5) "That since the date of the hearing on said libel certain newly discovered evidence material to the issues involved in said trial has come to the attention of your petitioner which was not available or known to the libellee at the time of said trial, to wit: the testimony of certain attorneys-at-law, neighbors and other persons relating to the facts constituting the said alleged desertion and including certain material circumstances tending to prove that no such desertion took place or was contemplated by the said libellee."

The exceptions, so far as they need to be considered here, are (1) to the exclusion of the testimony of Dr. Henry M. Swift, an expert on mental diseases, as to an examination of the libellee made by him

on November 30, 1925, about the time of the first hearing on the divorce libel; (2) to the exclusion of evidence of the same character by Dr. Clement P. Wescott, an expert on mental diseases; (3) to the ruling of the presiding Justice, denying the petition for a new hearing.

The decree dismissing the petition states that "the issue of insanity was passed upon in the original hearing. Evidence was introduced, arguments made and after long and careful consideration I concluded that this petitioner, then the libellee, was sane; that a divorce should be granted and so decreed. And at this time, after hearing all testimony and consideration of same, I am of the same opinion.

"The allegation in the petition that a new trial should be granted because of newly discovered evidence (even if it be a cause) is not sustained. Petitioner is not within the rule. While it may be newly discovered by present attorneys, it must have been necessarily known by attorneys in the former proceedings but, if not known, is not sufficient to change the findings."

In considering the exceptions, it must be kept in mind that the fact that the petition was heard before the same Justice who heard the original case does not in any way affect the rules of evidence. The issue involved was whether or not the judgment adverse to the petitioner's ward had been rendered by reason of "fraud, accident, mistake or misfortune" and that, therefore, "justice had failed."

Petitioner's case rests on two propositions: (1) that because of her mental condition during the entire period covered by the divorce proceedings including the spring and summer of 1927 and because of her physical illness in April of that year, Mrs. Melnick was unable to properly present her defense; and (2) that the divorce was procured by the fraud of her husband in deceiving the court both as to her mental condition and as to the real facts with regard to their separation; facts which it is contended are inconsistent with a finding that she was guilty of desertion.

Her sanity for three years prior to August 17, 1925, the date of her husband's libel, was in issue in the court below as was her sanity during the progress of the case, from the date of the libel to the date of the *nisi prius* decree.

These questions having been determined were not open under

this petition. The judgment of the trial court in these respects must stand, assuming that the record discloses evidence in its support, and whether or not such basis for the judgment exists is a question to be raised by exceptions, not by such a petition as this.

In these proceedings it is incumbent on petitioner to show that justice has failed, not because petitioner regards the findings of the court below as erroneous, but because of fraud, accident, mistake or misfortune. Petitioner must establish this proposition in order to be entitled to a hearing on the merits of the original case.

Mrs. Melnick's sanity during the period between the date of the *nisi prius* decree and the final action of the appellate court in dismissing her exceptions for want of prosecution was in issue under the allegation in the petition that at that time she was unable to intelligently instruct her counsel and to take necessary measures to protect her rights.

On this point the court received the evidence of Dr. Solomon who examined her in October, 1927, found her insane, and testified that in his opinion the insanity was of long duration.

Dr. Swift testified that he had examined Mrs. Melnick in November, 1925, and again two years later. Evidence as to what he found in 1925 was excluded, both on the ground that the presiding Justice had already heard it in the divorce proceedings and that the question of her sanity at that time having been decided was not in issue. It was urged that the diagnosis of 1925 was confirmed by the examination in 1927 and that the opinion of the expert was based on both examinations. But the witness was confined to testimony as to what he observed in November, 1927.

Notwithstanding the fact that the court had decided that Mrs. Melnick was sane at the time of the filing of the libel in 1925, and had been sane during the three preceding years and had also, at some time between August, 1925, and April, 1927, decided that her mental condition was such that there was no occasion for the appointment of a guardian *ad litem*, the question of her sanity following the date in April, 1927, when the court below filed its final decree and between that date and the day in June, 1927, when her counsel abandoned the prosecution of her case in the law court, was in issue in these proceedings under the allegation that during that latter period, living in another state and physically ill, she

was in a mental state which prevented her directing or consulting her attorneys in Maine and that it was this unfortunate condition which prevented her from exhausting the remedy presented by her exceptions.

Her mental condition during that period had never been passed upon. On that issue, testimony as to her condition, both prior and subsequent to the date of the *nisi prius* decree, was pertinent. The fact that the presiding Justice had, in a former hearing, heard Dr. Swift's recital of what he had discovered in 1925 and had not been impressed by his statement of the diagnosis made at that time, affected in no way the admissibility of the testimony.

Dr. Wescott had also examined Mrs. Melnick in November, 1925, and in November, 1927.. He was permitted to testify as to her condition in 1927, but his testimony as to the examination in 1925 was excluded.

The exclusion of the evidence of these two experts concerning Mrs. Melnick's sanity in 1925 was error. It bore directly upon her sanity in 1927 and upon her ability to properly protect her interests during the spring and summer of that year. Taken in connection with the evidence of the same experts concerning her condition in 1927, it is not subject to the criticism of being too remote, nor was it excluded on that ground. The ruling of the court in this respect was apparently based upon the premises already suggested, namely, that the evidence had been previously heard by the presiding Justice and that the issue raised by the evidence had already been finally decided. These reasons are not sufficient to warrant the exclusion of the evidence. The first is unimportant. The second indicates a misapprehension of the real bearing and probative force of the evidence.

There was testimony also that Dr. Melnick and Mrs. Melnick separated in 1918 by mutual agreement evidenced by a document drawn up by an attorney, under the terms of which the doctor paid a certain weekly sum in support of his wife. There was no evidence negativing the suggestion that they continued to live apart in accordance with this agreement up to the very time of the filing of the libel. The divorce was granted for the cause of desertion. Desertion could not be predicated on a separation by mutual consent.

When this evidence was offered in support of the petition, it was

referred to as "newly discovered." It was received but was given no weight, the decree stating as the reasons for disregarding this testimony, first that it did not come within the rule admitting evidence as "newly discovered," and second that it was not sufficient to change the findings in the former proceedings. There is no intimation that the facts thus testified to were in evidence at the hearing on the divorce libel. The inference is otherwise. If this evidence actually revealed to the court for the first time the facts concerning the separation, it was not only admissible but entitled to great weight because it was directly applicable to the proposition that the divorce was procured by fraud.

The testimony concerning the agreement to live apart included a letter under date of April, 1921, which plainly showed that up to that time there had been no desertion. The libel declared that the desertion occurred on February 27, 1919. A situation was indicated by this evidence which at least demanded careful investigation.

The presiding Justice apparently misunderstood the purpose and effect of this evidence. The decree shows that the matter was somewhat confused in his mind. The evidence concerning the separation came from an attorney who had transacted no business with Mrs. Melnick since 1921, in fact had not seen her or corresponded with her or acted for her in any way since that time. Yet the decree states as a reason for disregarding this testimony that this attorney represented her in the divorce proceedings between 1925 and 1927. It is difficult to understand just what caused the presiding Justice to fall into such a patent error.

This evidence was entitled to grave consideration; not because it was newly discovered but because it bore directly on the issue involved in the petition. It is true that it was admitted. But it apparently was not considered. Its bearing upon a direct issue raised by this petition, the issue of fraud practiced upon the court by the libellant, did not impress the mind of the trial Judge.

The exclusion of the evidence offered by Dr. Swift and Dr. Wescott and the failure to consider the evidence relating to the circumstances surrounding the separation may have resulted in injustice to Mrs. Melnick. She is entitled to an opportunity to make full presentation of her case and to thoughtful consideration of all competent evidence presented by her.

*Exceptions sustained.*